UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **SHASTON SAM**<br>    **LA. DOC #318573**<br>**VS.** | **CIVIL ACTION NO. 3:11-cv-1610**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **DR. THOMPSON, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Shaston Sam, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 31, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Richwood Correctional Center (RCC), Monroe, Louisiana. Plaintiff complains that he was denied appropriate medical care. He seeks money damages against Dr. Thompson, Nurse Redding and unnamed medical personnel at RCC "for malpractice pain and suffering and emotional stress" causing weight loss. He also seeks a transfer to another facility.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§1915 and 1915A and 42 U.S.C. §1997e.

*Background*

On or about May 9, 2011 plaintiff was tested for tuberculosis.[1] Plaintiff claims that prior to receiving the test he advised the nurse that he was previously exposed to tuberculosis and that he had previously had two positive PPD test results.

Nurse Redding advised plaintiff that he should submit a sick call if he believed his current test was positive for tuberculosis. According to plaintiff, she did not examine his arm, nor did she examine any other inmates who received the test. At some point, plaintiff claims that his arm began to swell. He was examined by Nurse Redding and he reminded her of their previous conversation in which he allegedly reminded her of the prior positive PPD tests. Nurse Redding denied having been told about the prior positive tests and implied that plaintiff should have told her about those results prior to the administration of the complained of test.

Plaintiff claims that he advised both Nurse Redding and Dr. Thompson of the two prior positive results and requested chest x-rays. Upon making this request, Redding allegedly inquired

---

[1] As is shown below, a PPD test was administered. The PPD skin test is a method used to diagnose tuberculosis (TB). PPD stands for purified protein derivative. The test site (usually the forearm) is cleansed with rubbing alcohol. The PPD extract is then injected under the top layer of skin, causing a welt to form on the skin. This welt usually goes away in a few hours. The reaction will take 48 - 72 hours to develop. The patient must return to the health care provider at that time to have the area checked. This check will determine whether the patient had a significant reaction to the PPD test. The reaction is measured in millimeters of firm swelling (induration), not redness, at the site of infection. Patients should advise their health care provider if they have ever had a positive PPD skin test. If so, a repeat PPD test is generally not called for except under unusual circumstances. A negative reaction (no induration) or a size of hard swelling that falls below the cutoff for each risk group usually means that the patient has not been infected with the bacteria that cause TB.

Medline Plus, A service of the United States National Library of Medicine, National Institutes of Health, Encyclopedia, online version at,
http://www.nlm.nih.gov/medlineplus/ency/article/003839.htm

whether plaintiff had sufficient funds in his inmate account to pay for the x-rays. Plaintiff was advised that he could be examined at the hospital but he would be responsible for the $10 co-pay. Plaintiff claimed to have insufficient funds and therefore he was not able to obtain the x-ray.

According to plaintiff he was dismissed from the nurse's station. He complained that Dr. Thompson provided a cursory examination and that his requests to Warden Savage, Captain Coleman, and Major Tubbs were ignored. Plaintiff claimed to have experienced "extreme duress" and worry because of the uncertainty surrounding his condition. He complained that he was charged $12 for an examination by the physician but did not receive the results of the examination.

On July 17, 2011 plaintiff submitted a prison grievance alleging the claims as outlined above. He asked to be transferred to a state facility and for permission to file a civil suit for money damages.

On August 3, 2011 Nurse Redden responded to the grievance. She advised,

> When PPD was given in the dorms, all inmates were made aware if they had a positive PPD in the past. All they have to do is to tell the CNA who was present sitting the middle of the two nurses who was [giving] the test, and the CNA at that time would document beside their name the positive test from the past. At no point, was any inmate being held down and given the PPD test without his consent – <u>when inmate Sam Shaston, #318573 came to me to show me his arm the area was reddened with no induration noted</u>. Later Inmate Shaston continued to complain of his arm, having redness, and making threats that he would file a grievance. At that point, I placed Inmate Shaston on the Doctor's call out list; <u>on 5/17/2011 Inmate Shaston was examined by Doctor LaFleur. He, Doctor LaFleur determined that nothing else needed to be done. Inmate Shaston continued to complain then he was referred to LSU Monroe</u>. As a result Inmate Shaston has been scheduled for a chest X-Ray for August 9, 2011. [Doc. 1-2, pp. 5-6]

Plaintiff was apparently dissatisfied with that response and he appealed. On August 4, 2011 Asst. Warden Aultman denied further relief having determined that plaintiff was examined by the staff physician for tuberculosis and he determined that no further treatment was required. When plaintiff

3

continued to complain, an x-ray was scheduled for a later date. [Doc. 1-2, p. 7]

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(A court should begin its analysis by

"identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has provided the factual basis of his medical care claim; those facts alleged, taken as true, fail to state a claim for which relief may be granted. Further amendment is unnecessary.

**2. Medical Care**

Plaintiff is a prisoner in the custody of Louisiana's Department of Public Safety and Corrections. The constitutional right of a convicted prisoner, such as plaintiff, to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The

defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the decisions of the health care professionals who observed performed the PPD test on plaintiff and thereafter evaluated plaintiff's condition. Plaintiff's disagreement with their diagnosis and findings falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Furthermore, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual

knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed,</u> <u>and that they drew that inference</u>. *Id.* at 837.

In short, plaintiff has provided a conclusory series of allegations concerning the treatment of unspecified problems which allegedly caused pain in his wrist and back. He has not alleged the nature of his injury or medical condition and it appears that he was unable to be more specific when he complained to the health care professionals at FPDC. His failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint for failing to state a claim for which relief may be granted.

Plaintiff's allegations are assumed to be true. Nevertheless he fails to state a claim for which relief may be granted. Indeed, to the extent that plaintiff was erroneously given a third PPD test, plaintiff's complaint suggests negligence and not deliberate indifference on the part of the prison's health care professionals. Further, it is clear that plaintiff suffered no ill effects from the test. The health care professionals – a nurse and a physician – examined the test site and found no induration. Finally, even though no physical harm was noted, plaintiff was nevertheless scheduled for a follow-up x-ray in order to reassure him.

*Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, January 12, 2012.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE